IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANNY LEE HILL | ) | CASE NO.  4:96CV0795 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | |
| CARL ANDERSON, WARDEN | ) | <u>MEMORANDUM OF OPINION</u> |
| | ) | <u>AND ORDER</u> |
| Respondent. | ) | |

This matter is before the Court upon Petitioner Danny Lee Hill's Motion for Discovery, (Doc. 117), Motions to Expand the Record Under Rules 5 and 7 of the Rules Governing Section 2254 Cases (Docs.119, 120), Motion for Evidentiary Hearing Pursuant to Rule 8 of the Rules Governing Section 2254 Cases (Doc. 118) and Motion to Supplement Motion for Evidentiary Hearing and to Expand the Record (Doc. 129). In addition to Petitioner's briefs in support of his Motions, the Court has considered Respondent Carl Anderson's Opposition to Petitioner's Motion for Discovery (Doc. 125), Respondent's Responses to Petitioner's Motions to Expand the Record (Docs. 123, 131), Petitioner's Reply Brief to Respondent's Opposition to Motion to Expand the Record, Discovery and Evidentiary Hearing (Doc. 127) and Respondent's Memorandum in Opposition to Petitioner's Motion for Evidentiary Hearing (Doc. 125). For the following reasons, Petitioner's Motions to Expand the Record Pursuant to Rules 5 and 7 of the  Rules Governing Section 2254 Cases are DENIED. His Motion for Discovery is GRANTED, the motion to supplement the motion for an evidentiary hearing is GRANTED, and the Motion for Evidentiary Hearing Pursuant to Rule 8 of the Rules Governing Section 2254 Cases is DENIED WITHOUT PREJUDICE.

# I. PROCEDURAL HISTORY

On September 9, 1999, the United States District Court for the Northern District of Ohio dismissed Petitioner's Petition for Writ of Habeas Corpus. Three years later, the Sixth Circuit Court of Appeals remanded the case to the district court with instructions to dismiss Petitioner's unexhausted claim pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002).[1] It further ordered his remaining claims stayed pending exhaustion of state court remedies. Thereafter, the state trial court determined that Petitioner was not mentally retarded.  The Ohio Court of Appeals, Eleventh District, affirmed the trial court's decision.  *State v. Hill*, 177 F.3d 171 (Ohio App., 11th Dist. 2008). The Supreme Court of Ohio did not accept the appeal for review. *State v. Hill*, 122 Ohio St.3d 1502 (2009). Petitioner's state court remedies having been completed, he has now filed an Amended Petition for Writ of Habeas Corpus presenting the following issues:  1) The death sentence imposed against Petitioner violates the Eighth Amendment under *Atkins* due to his mental retardation; 2) counsel assigned to represent Petitioner at the state *Atkins* hearing rendered ineffective assistance of counsel by failing to investigate and to present compelling and relevant evidence in support of the *Atkins* claim; and 3) Petitioner cannot be executed because he is mentally retarded.

# II. FACTS

The following facts were set forth by the Supreme Court of Ohio in its decision on Petitioner's direct appeal of his convictions and sentences. On September 10, 1985, at approximately

---

[1]In *Atkins*, the United States Supreme Court decided that the death penalty cannot be imposed on a mentally retarded offender.

5:15 p.m., twelve-year-old Raymond Fife left home on his bicycle to visit a friend, Billy Simmons. According to Billy, Raymond would usually get to Billy's residence by cutting through the wooded fields located behind the Valu-King store on Palmyra Road in Warren.

Matthew Hunter, a Warren Western Reserve High School student, testified that he went to the Valu-King on the date in question with his brother and sister shortly after 5:00 p.m. Upon reaching the front of the Valu-King, Hunter saw Tim Combs and Petitioner, walking in the parking lot towards the store. After purchasing some items in the Valu-King, Hunter observed Petitioner and Combs standing in front of a nearby laundromat. Combs greeted Hunter as he walked by. Hunter also saw Raymond Fife at that time riding his bike into the Valu-King parking lot.

Darren Ball, another student at the high school, testified that he and Troy Cree left football practice at approximately 5:15 p.m. on September 10 and walked down Willow Street to a trail in the field located behind the Valu-King. Ball testified that he and Cree saw Combs on the trail walking in the opposite direction from the Valu-King. Upon reaching the edge of the trail close to the Valu-King, Ball heard a child's scream, "like somebody needed help or something."

Yet another student from the high school, Donald F. Allgood, testified that he and a friend were walking in the vicinity of the wooded field behind the Valu-King between 5:30 p.m. and 6:00 p.m. on the date in question.  Allgood noticed Petitioner, Combs and two other persons "walking out of the field coming from the Valu-King," and saw Petitioner throw a stick back into the woods. Allgood also observed Combs pull up the zipper of his blue jeans. Combs "put his head down" when he saw Allgood.

At approximately 5:50 p.m. on the date in question, Simmons called the Fife residence to find out where Raymond was.  Simmons then rode his bicycle to the Fife's house around 6:10 p.m. When

3

it was apparent that Raymond Fife's whereabouts were unknown, Simmons continued on to a Boy Scouts meeting, while members of the Fife family began searching for Raymond.

At approximately 9:30 p.m., Mr. Fife found his son in the wooded field behind the Valu-King. Raymond was naked and appeared to have been severely beaten and burnt in the face. One of the medics on the scene testified that Raymond's groin was swollen and bruised, and that it appeared that his rectum had been torn. Raymond's underwear was found tied around his neck and appeared to have been lit on fire.

Raymond died in the hospital two days later. The coroner ruled Raymond's death a homicide. The cause of death was found to be cardiorespiratory arrest secondary to asphyxiation, subdural hematoma and multiple trauma. The coroner testified that the victim had been choked and had a hemorrhage in his brain, which normally occurs after trauma or injury to the brain. The coroner also testified that the victim sustained multiple burns, damage to his rectal-bladder area, and bite marks on his penis. The doctor who performed the autopsy testified that the victim sustained numerous external injuries and abrasions and had a ligature mark around his neck. The doctor also noticed profuse bleeding from the victim's rectal area and testified that the victim had been impaled with an object that had been inserted through the anus and that penetrated through the rectum into the urinary bladder.

On September 12, 1985, Petitioner went downtown to the Warren Police Station to inquire about a $5,000 reward that was being offered for information concerning the murder of Raymond Fife. Petitioner met with Sergeant Thomas W. Stewart of the Warren Police Department and told him that he had "just seen Reecie Lowery riding the boy's bike who was beat up." When Stewart asked Petitioner how he knew the bike he saw was the victim's bike, Petitioner replied, "I know it is."

4

Petitioner then told Stewart, "If you don't go out and get the bike now, maybe [Lowery will] put it back in the field." According to Stewart, Petitioner then stated that he had seen Lowery and Andre McCain coming through the field at around 1:00 that morning. In the summary of his interview with Petitioner, Stewart noted that he "knew a lot about the bike and about the underwear around the [victim's] neck." Also, when Stewart asked Petitioner if he knew Tim Combs, Petitioner replied, "Yeah, I know Tim Combs. * * * I ain't seen him since he's been out of the joint. He like boys. He could have done it too."

On September 13, 1985, the day after Stewart's interview with Petitioner, Sergeant Dennis Steinbeck of the Warren Police Department read Stewart's summary of the interview, and then went to Petitioner's home and asked him to come to the police station to make a statement. Petitioner voluntarily went to the police station with Steinbeck, whereupon he was advised of his *Miranda* rights and signed a waiver of rights form. Petitioner then made a statement that was transcribed by Steinbeck, but the Sergeant forgot to have himt sign the statement. Subsequently, Steinbeck discovered that some eyewitnesses had seen Petitioner at the Valu-King on the day of the murder.

On the following Monday, September 16, Steinbeck went to Petitioner's house accompanied by Petitioner's uncle, Detective Morris Hill of the Warren Police Department. Petitoner again voluntarily went to the police station, as did his mother. Petitioner was again given his *Miranda* rights, which he again waived. After further questioning by Sergeants Stewart and Steinbeck and Detective Hill, Petitioner indicated that he wanted to be alone with his uncle, Detective Hill. Several minutes later, Petitioner stated to Detective Hill that he was "in the field behind Valu-King when the young Fife boy got murdered."

Petitioner was given and waived his *Miranda* rights again, and then made two more voluntary

statements, one on audiotape and the other on videotape. In both statements, Petitioner admitted that he was present during the beating and sexual assault of Raymond Fife, but that Combs did everything to the victim. Petitioner stated that he saw Combs knock the victim off his bike, hold the victim in some sort of headlock, and throw him onto the bike several times.  Petitioner further stated that he saw Combs anally rape the victim and kick him in the head. Petitioner stated that Combs pulled on the victim's penis to the point where he assumed Combs had pulled it off.  Petitioner related that Combs then took something like a broken broomstick and jammed it into the victim's rectum. Petitioner also stated that Combs choked the victim and burnt him with lighter fluid. While Petitioner never admitted any direct involvement in the murder, he did admit that he stayed with the victim while Combs left the area of the attack to get the broomstick and the lighter fluid used to burn the victim.

Upon further investigation by authorities, Petitioner was indicted on counts of kidnaping, rape, aggravated arson, felonious sexual penetration, aggravated robbery and aggravated murder with specifications.

On January 21, 1986, Petitioner's trial began in front of a three judge panel. Among the voluminous testimony from witnesses and the numerous exhibits, the following evidence was adduced.

Petitioner's brother, Raymond L. Vaughn, testified that he saw Petitioner wash his gray pants on the night of the murder as well as on the following two days. Vaughn identified the pants in court, and testified that it looked like Petitioner was washing out "something red. * * * It looked like blood to me * **."

Detective Sergeant William Carnahan of the Warren Police  Department testified that on

6

September 15, 1985, he went with eyewitness Donald Allgood to the place where Allgood stated he had seen Petitioner and Combs coming out of the wooded field, and where he had seen Petitioner toss "something" into the woods. Carnahan testified that he returned to the area with workers from the Warren Parks Department, and that he and Detective James Teeple found a stick about six feet from the path where Allgood saw Petitioner and Combs walking.

Dr. Curtis Mertz, a forensic pathologist, stated that: "It's my professional opinion, with a reasonable degree of medical certainty, Hill's teeth, as depicted by the models and the photographs that I had, made the bite on Fife's penis."

The defense called its own forensic pathologist, Dr. Lowell Levine, who stated that he could not conclude with a reasonable degree of certainty as to who made the bite marks on the victim's penis. However, Levine concluded: "What I'm saying is either Hill or Combs, or both, could have left some of the marks but the one mark that's consistent with the particular area most likely was left by Hill."

Doctor Howard Adelman, the pathologist who performed the autopsy of the victim's body, testified that the size and shape of the point of the stick found by Detective Carnahan was "very compatible" with the size and shape of the opening through the victim's rectum. Adelman described the fit of the stick in the victim's rectum as "very similar to a key in a lock."

At the close of trial, the trial panel deliberated for five hours and unanimously found defendant guilty on all counts, except the aggravated robbery count and the specification of aggravated robbery to the aggravated murder count.

Pursuant to R.C. § 2929.04(B), a mitigation hearing was held by the three judge panel beginning on February 26, 1986. The panel received testimony and thereafter weighed the

7

aggravating circumstances against the mitigating factors. The panel then sentenced Petitioner to ten to twenty-five years imprisonment for both aggravated arson and kidnaping, life imprisonment for rape and felonious sexual penetration, and the death penalty for aggravated murder with specifications.

Timothy Combs was also charged and convicted as a principal offender in the murder of Raymond Fife. See *State v. Combs,* 1988 WL 129449 (Ohio App. 11th Dist., Dec 2, 1988); *State v. Hill*, 64 Ohio St.3d 313, 313-17 (1992).


### III. EXPAND THE RECORD

Petitioner moves, pursuant to Rule 5 of the Rules Governing Section 2254 Cases, to include in the record all additional documents from his inmate prison file that were not included in his *Atkins* hearing conducted in the Trumbull County Common Pleas Court. Although portions of these documents were released to the trial judge and to the parties, the documents not included are allegedly relevant to the issue involved in the pending amended petition.

Habeas Rule 5 allows for expansion of the record, stating in pertinent part: "The judge may order that the Respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished." Rule 5 of the Rules Governing Section 2254 Cases.

Rule 7 of the Rules Governing Section 2254 Cases provides:

(a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

(b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and

considered as part of the record.

(c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rule 7 allows the record to be expanded to include additional material relevant to the merits of the petition. *Adkins v. Konteh,* 2007 WL 461292 *20 (N.D. Ohio Feb. 7, 2007) (citing *Jamison v. Collins*, 291 F.3d 380, 387 (6th Cir.2002)). In fact, its purpose is to clarify the relevant facts. *Vasquez v. Hillery,* 474 U.S. 254, 258 (1986).

Petitioner moves for the expansion of the record in this habeas case to include the following documents:

1. Declaration of J. Gregory Olley, Ph.D., filed as ECF 117-1 with Petitioner Hill's Motion for Discovery, ECF 117, and as ECF 118-4 with Petitioner Hill's Motion for Evidentiary Hearing, ECF 118.

2. Declaration of Karen Weiselberg-Ross, filed as ECF 94-2, with the Amended Habeas Petition, ECF 94.

3. Declaration of William Baer, filed as ECF 94-3, with the Amended Habeas Petition, ECF 94.

4. Declaration of Annette Campbell, filed as ECF 94-4, with the Amended Habeas Petition ECF 94,

5. Video Deposition of Annette Campbell take June 25, 2010, filed as ECF 118-3 with Petitioner's Motion for Evidentiary Hearing, ECF 118.

6. Declaration of John Vermeulen, M.D., filed as ECF 94-5, with the Amended Habeas Petition ECF 94.

7. Declaration of Mrs. Vermeulen, filed as ECF 94-6, with the Amended Habeas

Petition ECF 94.

8. Declaration of James Spindler, filed as ECF 94-7, with the Amended Habeas Petition ECF 94.

9. Declaration of Joe D'Ambrosio, filed as ECF 94-8, with the Amended Habeas Petition ECF 94

10. Declaration of Gerald "Bob" Hand, filed as ECF 94-9, with the Amended Habeas Petition ECF 94.

11. Declaration of Percy Hutton, filed as ECF 94-10, with the Amended Habeas Petition ECF 94.

12. Declaration of Kevin Keith, filed as ECF 94-11, with the Amended Habeas Petition ECF 94.

13. Declaration of Gary Johnson, filed as ECF 117-14 with Petitioner Hill's Motion for Discovery, ECF 117, and ECF 118-2 with Petitioner Hill's Motion for Evidentiary Hearing. ECF 118.

14. Declaration of Mike Palmer, filed as ECF 118-10 with Petitioner Hill's Motion for Evidentiary Hearing, ECF 118.

15. Declaration of Christopher McDowell, filed as ECF 117-6 with Petitioner Hill's Motion for Discovery, ECF 117.

16. Video deposition of Debbie Tincher Flaherty filed with Petitioner's Motion to Supplement Motion for Evidentiary Hearing and Expansion of the record, including four exhibits, (ECF 129).

Respondent has no objection , provided that the materials are received only for the purpose of whether an evidentiary hearing would be appropriate.

In *Holland v. Jackson*, 542 U.S. 649, 653 (2004), the United States Supreme Court held that

10

the restrictions set forth in 28 U.S.C § 2254(e)(2) "apply *a fortiori* when a prisoner seeks relief based on new evidence without an evidentiary hearing." *Lynch v. Hudson*, 2010 WL 2076925 * 3 (S.D. Ohio, May 24, 2010); *Keenan v. Bagley,* 2008 WL 4372688 * 2 (N.D. Ohio, Sep. 22, 2008); *Stallings v. Bagley*, 2007 WL 437888 * 2 (N. D. Ohio, Feb. 6, 2007); *Phillips v. Bradshaw*, 2006 WL 2855077, at *10 (N. D. Ohio, Sep. 29, 2006), *aff'd.*, 607 F.3d 199 (6th Cir. 2010). After *Holland*, the § 2254(e)(2) standards are applied to motions to expand the record. *Phillips*, 2006 WL 2855077 at * 10, (citing *Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9th Cir. 2005).[2] Recently, the Sixth Circuit in *Landrum v. Mitchell*, 2010 WL 4352213, at *16 (6th Cir. Nov. 4, 2010) stated: "We hold that the district court did not abuse its discretion in denying Landrum's motion to expand the record because he has not shown that the factual predicate of Hill's affidavit could not have been discovered previously through the exercise of due diligence. *See* 28 U.S.C. § 2254(e)(2); *Holland,* 542 U.S. at 652-53." *Id*.; *see also Pruitt v. Welsh*, 2010 WL 3260059 * 4 (N.D. Ohio, Aug. 18, 2010) (Rule 7 requests to expand the record are limited to the same extent that § 2254(e)(2) limits the availability of an evidentiary hearing).

New evidence can be admitted to the record only if petitioner was not at fault in failing to

---

[2]  28 U.S.C. § 2254(e)(2) provides:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
  (A) the claim relies on--
  (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
  (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

develop that evidence in state court, or if he was at fault, if the conditions prescribed by § 2254(e)(2) were met. See *Williams v. Taylor,* 529 U.S. 420, 431-437 (2000); *James v. Brigano*, 470 F.3d 636,642 (6th Cir. 2006). " A prisoner is at fault in failing to develop the evidence if there is a 'lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.' The required diligence is 'a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.'" *Landrum,* 2010 WL 4352213 at * 16 (quoting *Williams*, 529 U.S. at 432, 435).

Petitioner failed to develop the record, allegedly because his counsel was ineffective during the state court *Atkins* hearing. He contends that he cannot be at fault for not developing the record because of ineffective assistance of counsel during the state court *Atkins* hearing. The issue of Petitioner's counsel's ineffectiveness in the state court *Atkins* hearing allegedly could not be litigated in the state court since there is no mechanism in state court for litigating ineffective assistance of counsel during collateral proceedings. In *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987), the Supreme Court held that there is no Eighth Amendment or due process right to counsel during state collateral proceedings. *See Ritchie v. Eberhart,* 11 F.3d 587, 591-92 (6th Cir.1993). Thus, there is no right to the effective assistance of post-conviction counsel. *Murray v. Giarratano,* 492 U.S. 1, 8, (1989); *Lopez v. Wilson,* 426 F.3d 339, 352 (6th Cir. 2005); *Stojetz v. Ishee*, 389 F.Supp.2d 858, 889 (S.D. Ohio, 2005); *Paris v. Carlton*, 2010 WL 1257970 * 12 (E.D. Tenn., Mar. 26, 2010). This applies even if counsel is provided. *Id*. Further, 28 U.S.C. § 2254(i) provides that state collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under § 2254.

Petitioner suggests that, when there is no available state corrective process, the exhaustion requirement is excused under § 2254(b)(1)(B)(1), which provides that habeas corpus cannot be

12

granted unless there is an absence of available state corrective process.  The cases cited were not on point and none were found discussing the relationship of the two subsections. If Petitioner's contention were true, there would be no reason for the existence of § 2254(i). The Court concludes that Petitioner cannot show that he was not at fault for failing to develop the record.

When the Petitioner has shown that he failed to develop the record, the court can conduct an evidentiary hearing if the factual predicate could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(ii). Petitioner asserted that his counsel was ineffective because they could have investigated and presented relevant and readily available evidence at the *Atkins* hearing. Thus, his counsel was not diligent. If his counsel had been diligent, the requested evidence would have been presented at the *Atkins* hearing. However, Petitioner has not shown that the criteria set forth in § 2254(e)(2)(A) and (B) required for an evidentiary hearing which also applies to expansion of the record, have been satisfied.  Accordingly, Petitioner's motion to expand the record are DENIED.

### IV. DISCOVERY

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Nevertheless, the All Writs Act, 28 U.S.C. § 1651, gives federal courts the power to "fashion appropriate modes of procedure"" including discovery, to dispose of habeas petitions "as law and justice require." *Id.*  A habeas petitioner's discovery request is governed by Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts.  The rule provides:

A judge may, for *good cause*, authorize a party to conduct discovery under the

13

> Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

Rule 6(a), Rules Governing Section 2254 Cases in the United States District Courts (emphasis added). Good cause exists where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *Harris v. Nelson,* 394 U.S. 286, 300 (1969); *Williams v. Bagley,* 380 F.3d 932, 974 (6th Cir. 2004); *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001). The additional discovery need only show good cause that the evidence sought would lead to relevant evidence. *Payne v. Bell*, 89 F. Supp.2d 967, 970 (W.D. Tenn., 2000)(citing *Calderon v. U.S. Dist. Court for the Northern Dist. of California,* 98 F.3d 1102, 1106 (9th Cir. 1996)). *See Keenan v. Bagley*, 262 F. Supp.2d 826, 838 (N.D. Ohio, 2003), *vacated on other grounds*, 400 F.3d 417 (6th Cir. 2005). Vague and conclusory allegations are not sufficient to allow discovery under Rule 6, and a petitioner may not embark on a fishing expedition in order to develop claims for which there is no factual basis. *Williams*, 380 F.3d at 974.

The Sixth Circuit has not determined whether § 2254(e)(2) applies to motions for discovery. Although the statute mentions only evidentiary hearings, it has been held applicable to motions for discovery and to expand the record with new evidence that is intended to achieve the same purpose. *Cowens v. Bagley*, 2002 WL 31370475 * 4 (S.D. Ohio, Sep. 30, 2002). However, in *Johnson v. Bobby*, 2010 WL 3909234 * 4 (S.D. Ohio, Sep. 30, 2010), the court found that a petitioner seeking discovery need not satisfy the stringent requirements established by 28 U.S.C. § 2254(e)(2) that govern the availability of evidentiary hearings in a habeas corpus proceeding. *See Simmons v. Simpson*, 2009 WL 4927679 * 5 (W.D. Ky., Feb. 12, 2009) (petitioner seeking discovery need not

14

satisfy the stringent requirements established by 28 U.S.C. § 2254(e)(2)). Petitioner's discovery Motion does  not seek to present new evidence in support of his claims. He has merely asked for leave to conduct discovery that may lead to new evidence. New factual information obtained through discovery may be inserted into the record without an evidentiary hearing. *Cowans*, 2002 WL 3137047 at * 4 (citing *Boyko v. Parke,* 259 F.3d 781, 790 (7th Cir.2001).

In any event, the Court will not apply the § 2254(e)(2) standard at this time to exclude discovery. Any arguments regarding whether § 2254(e)(2) precludes discovery will be discussed when and if Petitioner seeks to present that new evidence. The Court will be lenient in determining whether to allow additional discovery in capital cases in order to aid appellate review. If the Court finds during the course of this habeas litigation that § 2254(e)(2) applies to discovery, the Court reserves the right to amend its ruling.  A reviewing court will then be left with a full record of the materials at issue against which to judge this Court's ruling. Regardless whether the § 2254(e)(2) restrictions have been satisfied, Petitioner must still show good cause to obtain discovery related to his claims on the merits. Therefore, the Court will make its determination whether to allow discovery on that basis.

In claim 2 of the Amended Petition, Petitioner asserts that counsel assigned to represent him at the state *Atkins* hearing rendered ineffective assistance of counsel by failing to investigate and to present compelling and relevant evidence in support of the *Atkins* claim. Since  Petitioner is not entitled to effective assistance of counsel during post-conviction proceedings and the issue cannot be heard on habeas review, this claim will have no merit. Thus, he is not entitled to take depositions of Gregory Myers and Robert Lowe, the attorneys that represented Petitioner during post-conviction proceedings.

15

Petitioner seeks to take the depositions of Gregory Olley, Ph.D., Nancy Huntsman, Ph.D.,Warden Bradshaw, Jennifer Risinger, Death Row Unit Manager, Greg Morrow, Death Row Case Manager, and Ohio State Penitentiary Correctional Officer Danner. Except for the argument that Petitioner has failed to satisfy § 2254(e)(2) for an evidentiary hearing which in turn precludes discovery, Respondent does not discuss each specific request. Review of the requests for depositions show that each of these witnesses have information that, if the facts were fully developed, Petitioner may be entitled to relief. The same reasoning applies to the following documents: Trumbull County Prosecutor's file concerning *State v Hill* regarding who ordered IQ testing, ODRC Education Records, ODRC Correspondence with Trumbull County Board of Mental Retardation and Developmental Disabilities, all communications between the ODRC and the Ohio Attorney General's Office and the Trumbull County Prosecutor's Office, ODRC communications concerning Petitioner's exclusion from transfer to the Ohio State Penitentiary, log books from Mansfield Correctional Center concerning James Spindler and how he happened to administer the IQ test to Petitioner, voucher payment pertaining to James Spindler, policy for psychological testing of inmates, hygiene for general population and death row inmates and a video tape of a November 2006 incident where Petitioner was forced into the shower by other inmates. The interrogatories directed to the ODRC appear to request information concerning psychological testing, what communications occurred between ODRC, the Ohio Attorney General's Office and Trumbull County Prosecutor's Office as to what advice was given about Petitioner, and the names of all mental health service staff who had contact with Petitioner. All of this evidence may help show that Petitioner is entitled to relief. Accordingly, as discussed above, the motion for discovery is GRANTED IN PART AND DENIED IN PART.

16

## V. EVIDENTIARY HEARING

Petitioner seeks an evidentiary hearing to present witnesses who will testify about Petitioner's day to day functioning while on death row, their assessment of Petitioner while in school which would address the criteria of the onset of mental retardation before the age of 18, their mental health assessment of Petitioner while on death row which will address the ODRC's knowledge of his mental retardation, how the information from previous witnesses would impact their diagnosis of Petitioner , a custodian from ODRC who will testify to the authenticity of prison documents and Petitioner's counsel who will testify about their investigation.

The Court has the discretion to determine whether a habeas petitioner is entitled to an evidentiary hearing. *Brofford v. Marshall,* 751 F.2d 845, 853 (6th Cir. 1985). Where the hearing record is complete or if the petition raises only legal claims that can be resolved without the taking of additional evidence, an evidentiary hearing is not necessary. *David v. Woods,* 2009 WL 377062 * 1 (E.D. Mich., Feb. 11, 2009) (citing *Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir.1989); *United States v. Sanders,* 3 F.Supp.2d 554, 560 (M.D. Pa., 1998)). However, the Court has previously determined that Petitioner has not shown that he has satisfied § 2254(e)(2). Therefore, he is not entitled to an evidentiary hearing.

Petitioner asserts that the third amended claim, that he is actually innocent of the death penalty, can be a gateway to overcome any procedural default. However, Respondent has not asserted default in regard to any of Petitioner's three amended claims. Again, ineffective assistance of post-conviction counsel cannot be considered for habeas corpus relief.

17

Further, Petitioner may be contending that his claim of actual innocence excuses the requirement to comply with § 2254(e)(2).  Petitioner must demonstrate that the factual predicates of his claim could not have been previously discovered through the exercise of due diligence, under Section 2254(e)(2)(A)(ii), and that such facts support a convincing claim of innocence, under Section 2254(e)(2)(B). *Terrell v. Berghuis*, 2009 WL 799082 * 20 (W.D. Mich., Mar. 23, 2009). 28 U.S.C. § 2254(e)(2)(B) actually requires a petitioner first show his actual innocence before he can obtain an evidentiary hearing. *Gray v. Burt*, 2006 WL 1555995 * 4 (E.D. Mich., Jun. 5, 2006). Because Petitioner has failed to demonstrate due diligence and satisfaction of the §2254(e)(2) criteria, he is not entitled to an evidentiary hearing. *See Ross v. Berghuis*, 417 F.3d 552, 557 (6th Cir. 2005) (AEDPA's provision barring evidentiary hearings on habeas claims whose factual basis the state court has not reviewed, contains an identically worded "actual innocence" exception). *Abner v. Cook*, 2010 WL 547325 * 1 (N.D. Ohio, Feb. 28, 2010). (petitioner not entitled to an evidentiary hearing even though he claimed actual innocence because he did not show that he satisfied § 2254(e)(2)(A)).

## VI. CONCLUSION

Accordingly, Petitioner's Motions to Expand the Record (Docs. 119, 120) are DENIED. The Court notes that it considered all of the evidence proffered by Petitioner in resolving this issue. Accordingly, his motion to supplement (Doc. 129) his remaining motions is GRANTED.  His Motion for Discovery (Doc. 117) is GRANTED IN PART as detailed in  this opinion. Discovery shall be completed within120 days of this Order.  Further, Petitioner's counsel shall file a status report 60 days afer the date of this order, specifying the discovery that has been completed and/or scheduled.  Upon review of the merits, the Court may determine that a genuine factual dispute exists which cannot be

18

resolved on the record before the Court or through expansion of the record. In such case, the Court may reconsider its decision about whether an evidentiary hearing should be held, and may revisit the issue about whether Petitioner has made the threshold showing needed to entitle him to a hearing if one appears advisable. *See Braden v. Bagley,* 2009 WL 922363 *  8 (S.D. Ohio, Mar. 31, 2009). Therefore, Petitioner's Motion for Evidentiary Hearing (Doc. 118) is DENIED WITHOUT PREJUDICE. No additional motions need to be filed regarding this issue.

IT IS SO ORDERED**.**

Date: December 14, 2010                    ___*/s/ John R. Adams*_____
                                           JUDGE JOHN R. ADAMS
                                           UNITED STATES DISTRICT JUDGE