UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANNY LEE HILL, | : | CASE NO. 4:96 CV 00795 |
| | : | |
| Petitioner, | : | |
| | : | JUDGE JOHN R. ADAMS |
| vs. | : | |
| | : | |
| CARL ANDERSON, Warden, | : | |
| | : | **MEMORANDUM OF OPINION** |
| Respondent. | : | **AND ORDER** |

This matter is before the Court upon Petitioner Danny Lee Hill's ("Hill" or "Petitioner") Request for Authorization for Habeas Counsel to Conduct State Court Litigation. (ECF No. 156.) The Respondent, Warden Carl Anderson ("Respondent"), filed an Opposition to Appointment of Counsel to Conduct State Court Litigation. (ECF No. 157.) Hill filed a Reply to Respondent's opposition. (ECF No. 158.) For the following reasons, Hill's request is denied.

**I.   Relevant Procedural History**

On February 28, 1986, a three-judge panel sentenced Hill to death for the aggravated murder of twelve-year-old Raymond Fife ("Fife"). Timothy Combs also was charged and convicted in a separate trial as a principal offender in Fife's murder. *See State v. Combs,* No. 1725, 1988 WL 129449 (Ohio Ct. App. Dec. 2, 1988).

The Ohio Supreme Court summarized the evidence adduced at Hill's trial as follows:

Among the voluminous testimony from witnesses and the numerous exhibits, the

following evidence was adduced:

      Defendant's brother, Raymond L. Vaughn, testified that he saw defendant wash his gray pants on the night of the murder as well as on the following two days. Vaughn identified the pants in court, and testified that it looked like defendant was washing out "something red. * * * It looked like blood to me * * *."

      Detective Sergeant William Carnahan of the Warren Police Department testified that on September 15, 1985 he went with eyewitness Donald Allgood to the place where Allgood stated he had seen defendant and Combs coming out of the wooded field, and where he had seen defendant toss "something" into the woods. Carnahan testified that he returned to the area with workers from the Warren Parks Department, and that he and Detective James Teeple found a stick about six feet from the path where Allgood saw defendant and Combs walking.

      Dr. Curtis Mertz, a forensic odontologist, stated that: "It's my professional opinion, with reasonable degree of medical certainty, that Hill's teeth, as depicted by the models and the photographs that I had, made the bite on Fife's penis."

      The defense called its own forensic odontologist, Dr. Lowell Levine, who stated that he could not conclude with a reasonable degree of certainty as to who made the bite marks on the victim's penis. However, Levine concluded: "What I'm saying is either Hill or Combs, or both, could have left some of the marks but the one mark that's consistent with the particular area most likely was left by Hill."

      Doctor Howard Adelman, the pathologist who performed the autopsy of the victim's body, testified that the size and shape of the point of the stick found by Detective Carnahan was "very compatible" with the size and shape of the opening through the victim's rectum. Adelman described the fit of the stick in the victim's rectum as "very similar to a key in a lock."

*State v. Hill*, 64 Ohio St. 3d 313, 316, 595 N.E.2d 884, 889 (Ohio 1992).

Hill's conviction and sentence were left undisturbed on direct appeal. *See State v. Hill*, Nos. 3720, 3745, 1989 WL 142761 (Ohio Ct. App. Nov. 27, 1989); *State v. Hill*, 64 Ohio St. 3d 313, 595 N.E.2d 884 (Ohio 1992), *reh'g denied*, 65 Ohio St. 3d 1421, 598 N.E.2d 1172 (Ohio 1992); and *Hill v. Ohio*, 507 U.S. 1007 (1993). Hill also was unsuccessful in state post-

2

conviction proceedings. (*See* App. to Return of Writ, Exs. FF, GG.) *See also State v. Hill*, No. 94-T-5116, 1995 WL 418683 (Ohio Ct. App. June 16, 1995); *State v. Hill*, 74 Ohio St. 3d 1456, 656 N.E.2d 951 (Ohio 1995) (Table).

      Hill filed a petition for writ of habeas corpus with this Court on November 27, 1996. (ECF No. 18.) He asserted twenty-eight grounds for relief in his petition. In his third ground for relief, Hill argued that because of his "mental deficiencies," he was "incompetent" to waive his *Miranda* rights and a jury trial, violating his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. (*Id.* at 10-11.) Hill also asserted three claims that referenced the bite mark found on Fife. Specifically, in his eighth ground for relief, Hill alleged that photographs of the bite marks that were delivered by the State to him at the time of trial, should have been produced by the State during pre-trial discovery. (*Id.* at 15-16.) In his tenth ground, he alleged the prosecutor improperly stated during closing arguments that the bite mark was Hill's "calling card." (*Id.* at 18.) And in his twenty-sixth ground, Hill alleged that the state post-conviction court should have granted his request for appointment of a new expert to reexamine the bite-mark evidence that was litigated during the trial. (*Id.* at 36-37.) Another judge on this Court denied Hill's petition on September 29, 1999, but granted a certificate of appealability as to several of Hill's claims, including his third, eighth, and twenty-sixth grounds for relief. (ECF No. 54.)

      Hill appealed this Court's decision denying the writ to the Sixth Circuit Court of Appeals. While his appeal was pending, the United States Supreme Court decided *Atkins v. Virginia,* 536 U.S. 304 (2002), which held that the execution of mentally retarded offenders violates the Eighth Amendment's prohibition against cruel and unusual punishment. Less than two months later, on August 13, 2002, the Sixth Circuit returned Hill's case to this Court with instructions that it

"remand Hill's *Atkins* claim to a state court and stay his remaining claims pending resolution of the retardation issue." *Hill v. Anderson*, 300 F.3d 679, 680 (6th Cir. 2002). The court explained that it did not dismiss Hill's "mixed petition" containing exhausted claims along with the unexhausted *Atkins* claim, as it was authorized to do under § 2254(b)(2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because the issue of Hill's Eighth Amendment mental retardation claim had not been exhausted or conceded, and Ohio should have the opportunity to develop its own procedures for determining whether a particular claimant is retarded and ineligible for death. *Id*. at 682. It also found that Hill's mental status raised "a serious question" regarding the voluntariness of his confession to police. *Id*. at 682-83. The court emphasized the limited nature of its remand, however, stating:

> In *Zarvela v. Artuz*, the Second Circuit faced a similar mixed petition problem. *See* 254 F.3d 374, 380 (2001), *cert. denied*, 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001). Crafting a solution consistent with the purposes of the Antiterrorism Act, the court remanded to the district court with instructions to dismiss the unexhausted claim and stay the exhausted claims, but conditioned the stay on the petitioner promptly seeking state remedies and, when the state remedies were exhausted, promptly returning to federal court. *See id.* at 381. *Zarvela* has been cited with approval by this Court. *See Palmer v. Carlton,* 276 F.3d 777, 778 (6th Cir.2002).
>
> Here we adopt *Zarvela*'s approach and remand Hill's case to district court with instructions to dismiss his *Atkins* claim to be considered by state court and to stay his remaining claims pending exhaustion of state court remedies. To ensure that Hill does not draw out his state court proceedings, we instruct the district court to condition the stay on Hill's seeking relief from a state court on his *Atkins* claim within 90 days of the date the mandate issues from this Court.

*Id.* at 683.

In accordance with the Sixth Circuit's remand instructions, this Court dismissed Hill's *Atkins* claim on August 20, 2002, and stayed his remaining claims pending exhaustion of his

state-court remedies. (ECF No. 60.) Hill then filed a petition to vacate his death sentence with the state trial court on November 27, 2002, and an amended petition to vacate on January 17, 2003. (Supp. App., Disc 1, 31-32.) Hill, assisted by appointed counsel and two appointed experts, conducted substantial briefing and discovery regarding his claims. (*See id.* at 1-33.) The trial court, in accordance with the procedures established by the Ohio Supreme Court in *State v. Lott*, 97 Ohio St. 3d 303, 779 N.E.2d 1011 (Ohio 2002), held a twelve-day hearing, at which Hill submitted more than 500 pages of evidence. (*See* Supp. App., Disc 1, 486-1013.) At its conclusion, the trial court issued an 84-page opinion, which thoroughly examined the evidence and explained its decision. (*See id.* at 3399-3483.) Hill then was provided with appointed counsel to appeal the decision. (*See id.* at 3496-4517.) The Ohio court of appeals affirmed the trial court's decision on July 11, 2008. *State v. Hill*, 177 Ohio App. 3d 171, 894 N.E.2d 108 (Ohio Ct. App. 2008). The Ohio Supreme Court declined to review the case on August 26, 2009, with two justices dissenting. *State v. Hill*, 122 Ohio St. 3d 1502, 912 N.E.2d 107 (Ohio 2009) (Table).

After Hill exhausted his *Atkins* claims in state court, both parties promptly moved this Court to "reopen" Hill's habeas action. (ECF Nos. 63, 65.) The Court granted the motions on October 1, 2009, declaring Hill's habeas case "REOPENED" and ordering Hill to file a "supplement" to his petition that "shall contain only those new claims generated by the state court *Atkins* proceedings and shall not re-state the claims contained in the initial petition in this matter." (ECF No. 68.) On March 15, 2010, Hill filed an amended habeas petition in this Court, asserting his *Atkins* and *Atkins*-related claims. (ECF No. 94.) Respondent filed a supplemental return of writ on April 30, 2010. (ECF No. 98.) Hill filed his traverse on August 2, 2010. (ECF

No. 102.) Hill then requested, and was granted permission to conduct limited discovery, which he completed on April 13, 2011. (*See* ECF Nos. 132, 135.) Hill requested additional discovery on May 23, 2012, which this Court denied on July 10, 2012. (ECF No. 148.) Hill's *Atkins* petition currently is pending before this Court.

On March 31, 2014, Hill filed a motion in the Sixth Circuit requesting that it authorize his federally appointed and funded counsel who currently represent him in his habeas case to represent him in state-court litigation. Specifically, he wants his habeas counsel to assist him in obtaining a new trial in state court based on newly obtained evidence, a report from a forensic dental consultant who opines that the bite mark found on Fife "is not a human bitemark [*sic*]." (ECF No. 156, 1-2.) Hill filed a motion with this Court that same day, requesting permission to file his motion with the Sixth Circuit under seal. (ECF No. 150.) The Court granted Hill's motion on April 3, 2014, and Hill filed the sealed document with this Court that day. (ECF Nos. 151, 152, respectively.)

On April 18, 2014, the Sixth Circuit ordered Hill to file his motion with this Court, because, it stated, "[r]uling on Hill's motion would require [the court] to admit and consider new evidence, and [the court does] not generally allow a party to supplement the record with evidence not put before the district court in the first instance." (ECF No. 155, 2 (citations omitted).) Hill complied by filing his request with this Court on April 21, 2014. (ECF No. 156.) Respondent opposed the motion, and Hill replied to Respondent's opposition. (ECF Nos. 157, 158, respectively.)

**II.    Analysis**

   **A.    § 3599 and *Harbison v. Bell***

An indigent federal habeas corpus petitioner is entitled to the appointment of "one or more attorneys" and additional services that are "reasonably necessary" for "adequate representation" pursuant to 18 U.S.C. § 3599(a)(2).  Subsection (e) of § 3599 outlines the scope of that representation.  It provides:

> each attorney so appointed shall represent the defendant *throughout every subsequent stage of available judicial proceedings*, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, *and all available post-conviction process*, together with applications for stays of execution and *other appropriate motions and procedures* . . . .

18 U.S.C. § 3599(e) (emphasis added).

The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009), holding that the statute "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation."  *Id*. at 194.  The Supreme Court explained, "[u]nder a straightforward reading of the statute, subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties."  *Id.* at 185.  The Court noted, however, that appointed counsel is not expected to provide each of the many services enumerated in section (e) for every client.  Rather, "counsel's representation includes only those judicial proceedings transpiring 'subsequent' to her appointment."  *Id*. at 188.  Thus, "[i]t is the sequential organization of the statute and the term 'subsequent' that circumscribe counsel's representation, not a strict division between federal and state proceedings."  *Id*.

7

Of particular relevance here, the *Harbison* Court addressed the Government's concern that under the Court's interpretation of § 3599, federally appointed counsel would be required to represent their clients in state retrial or state habeas proceedings that occur after counsel's appointment because such proceedings are also "available post-conviction process." The Court explained that § 3599(e) does not apply to either of those proceedings because they are not "properly understood as a 'subsequent stage' of judicial proceedings but rather as the commencement of new judicial proceedings." *Id*. at 189. As to state habeas proceedings in particular, the Court noted,

> State habeas is not a stage "subsequent" to federal habeas. Just the opposite: Petitioners must exhaust their claims in state court before seeking federal habeas relief. *See* § 2254(b)(1). That state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute.

*Id*. at 189-90. It added in a footnote,

> Pursuant to § 3599(e)'s provision that counsel may represent her client "in other appropriate motions and procedures," a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation. This is not the same as classifying state habeas proceedings as "available post-conviction process" within the meaning of the statute.

*Id*. at 190 n.7. The Court further explained that § 3499(a)(2) "provides for counsel only when a state petitioner is unable to obtain adequate representation," and that appointed counsel is constitutionally required for state indigent defendants on retrial. *Id*. at 189.

The Sixth Circuit interpreted *Harbison* in *Irick v. Bell*, 636 F.3d 289 (6th Cir. 2011). The court affirmed a Tennessee district court's ruling granting a habeas petitioner's authorization for funding pursuant to § 3599 for his federally appointed counsel to represent him in clemency

8

proceedings, but denying it for the reopening of his state post-conviction and competency-to-be-executed proceedings. *Id*. at 291. It noted that in *Harbison,* the Supreme Court interpreted § 3599 to "provide[] for counsel only when a state petitioner is unable to obtain adequate representation," and concluded that "[a]bsent clear direction from the United States Supreme Court or Congress, we decline to obligate the federal government to pay for counsel in state proceedings where the state itself has assumed that obligation." *Id*. The court then held that because Tennessee law authorized appointed counsel in state competency and post-conviction proceedings, Irick's attorneys were not entitled to compensation for services related to those proceedings under § 3599. *Id*. at 291-92. The court further found that the state post-conviction proceedings at issue fell outside the scope of § 3599(e) because they were "the commencement of new judicial proceedings," rather than a stage "subsequent to federal habeas," and Irick was "not attempting to exhaust a claim in the state courts for the purpose of later presenting it in federal court; rather, he [was] re-opening a state judgment on state-law grounds." *Id*. at 292.

In this case, Hill argues that his habeas counsel's appointment is appropriate under the plain language and broad scope of § 3599 as a "subsequent stage of available judicial proceedings[,]" "available post-conviction process" and/or "other appropriate motions and procedures" referenced in § 3599(e). (ECF No. 156, 3-6.) Hill further contends the appointment is authorized by the Supreme Court's dicta in *Harbison* regarding federal funding of counsel for state habeas proceedings, because the state-court proceedings for which Hill seeks representation "are being litigated in the context of the habeas case to comply with the state exhaustion requirements of the AEDPA." (*Id*. at 3, 6-8.) Finally, Hill asserts that Ohio law does not provide for the appointment of counsel for the proceedings at issue. (*Id*. at 8-10.)

9

Respondent counters that Hill has no "pending" habeas action from which to seek appointment of counsel under § 3599, because his first habeas petition has been denied and reduced to judgment and the claim he wishes to present to state court is not related to his second, *Atkins* habeas action. (ECF No. 157, 1.) He argues that, as in *Irick*, Hill seeks to re-open his state judgment on state-law grounds, under which circumstances he is not entitled to federally funded counsel, rather than exhaust a claim in state court for the purpose of later presenting it in this habeas action in this Court. (*Id*. at 1-2.) This is apparent, he maintains, because the evidence at issue will not support a viable or cognizable federal habeas claim: the expert report is merely a new opinion on a fully litigated topic and therefore does not qualify as "newly discovered evidence"; the Supreme Court has not recognized a freestanding "actual innocence" claim in habeas; and Hill has not identified how such a claim could be used in his habeas case as a gateway to excuse an untimely petition or a procedurally defaulted claim. (*Id*. at 11-12.)

Hill replies that his habeas *Atkins* petition is in fact pending before this Court, and that his request falls within the scope of § 3599(e) because he must move for a new trial based on this evidence "for purposes of exhaustion in anticipation of federal habeas litigation, regardless of how it is subsequently fashioned." (ECF No. 158, 5.) He states that his new claim is "grounded in federal due process concerns." (*Id*. at 2-3.) Hill further argues that Ohio law does not provide "guaranteed" state-appointed counsel for the proceedings at issue. (*Id*. at 3-4.)

**B.  Exhaustion of Federal Habeas Claims vs. Commencement of New Judicial Proceedings**

The Court agrees with Respondent that Hill's request is not authorized by § 3599 because Hill seeks to initiate new state-court proceedings based on new, potentially exculpatory evidence,

10

rather than exhaust a federal claim related to his pending habeas petition. Although the majority in *Harbison* stated in dicta that district courts "*may* determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation," it expressly noted that "[t]his *is not* the same as classifying state habeas proceedings as 'available post-conviction process' within the meaning of the statute." *Harbison*, 556 U.S. at 190 n.7 (emphasis added). In fact, the Court was clear that the opposite is true: "State habeas is not a stage 'subsequent' to federal habeas," and therefore does not fall within the scope of § 3599. *Id*. at 189. The Sixth Circuit emphasized this point in *Irick* when it noted that the petitioner was "not attempting to exhaust a claim in the state courts for the purpose of later presenting it in federal court; rather, he [was] re-opening a state judgment on state-law grounds." *Irick*, 636 F.3d at 292.

Here, Hill requests federal funding of habeas counsel for the "commencement of new judicial proceedings" in order to attack his state-court conviction and sentence, placing this case squarely within *Irick*. All that is currently pending in this Court is Hill's amended habeas petition regarding his Eighth Amendment mental retardation claims. The Sixth Circuit was explicit in its limited remand to this Court: it instructed the Court to remand only Hill's *Atkins* claim to state court and to stay his remaining claims pending resolution of that issue alone. *Hill*, 300 F.3d at 680. This Court also has been clear about the limits of Hill's reopened habeas action. Once Hill completed his state-court *Atkins* proceedings, this Court ordered that Hill's supplemental habeas petition should "contain only those new claims generated by the state court *Atkins* proceedings and . . . not re-state the claims contained in the initial petition in this matter." (ECF No. 68.) Hill's alleged "newly discovered evidence" is completely unrelated to Hill's *Atkins* claims, and

11

any claims founded on that evidence would not be related to, or necessary for, the full disposition of Hill's pending petition. Although that evidence may relate to certain claims in Hill's initial habeas petition, the Court has ruled on those claims and that petition is no longer within this Court's jurisdiction.

The procedural posture of Hill's case is different than a habeas case in which the district court stays proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), to allow a petitioner to return to state court to exhaust certain claims asserted in a pending federal habeas petition. *See, e.g., Conway v. Houk*, No. 3:07 CV 345, 2013 WL 6170601, at *3 (S.D. Ohio Nov. 22, 2013); *Gapen v. Bobby*, No. 3:08 CV 280, 2013 WL 5539557, **4-5 (S.D. Ohio Oct. 8, 2013) (both finding it appropriate for federal habeas counsel to represent petitioner in state court to exhaust pending federal habeas claims). The Eleventh Circuit case, *Gary v. Warden, Georgia Diagnostic Prison*, 686 F.3d 1261 (11th Cir. 2012), is instructive. In *Gary*, a federal habeas petitioner sought federal funding under § 3599 for, among other things, an expert to assist appointed counsel in pursuing DNA testing, the results of which might serve as the basis for a motion for new trial. The court of appeals affirmed the district court's denial of funding. It explained,

> As the language of § 3599(e) and the Court's opinion in *Harbison* indicate, federally-funded counsel is available only for *certain* subsequent proceedings. A state court motion for DNA testing does not ordinarily follow the commencement of a federal habeas action and is, therefore, not a subsequent proceeding contemplated by § 3599(e), even when filed after the prisoner's federal habeas case has concluded.

*Id*. at 1274-75 (emphasis original). The court distinguished the petitioner's request from the scenario contemplated in the *Harbison* footnote regarding habeas petitioners' efforts to exhaust certain claims in a mixed petition. It noted that "[i]t is quite another matter, however, for an

12

indigent prisoner to expect federally-funded counsel to initiate an entirely *new* state court proceedings to obtain relief from a conviction and death sentence on a state law ground – in Gary's case, on the ground of newly discovered evidence." *Id*. at 1277 (emphasis original).

Similarly, here, Hill does not seek to exhaust a federal habeas claim currently pending before this Court. Instead, he requests funding for counsel to initiate an entirely new state-court proceeding by filing a motion for a new trial based on newly discovered evidence–wholly outside the context of his pending habeas case and clearly outside the scope of § 3599(e).

### C. Available State-Funded Representation

Furthermore, even if Hill's request for federally funded counsel were appropriate and authorized by § 3599, it would be precluded under *Harbison* because Hill has not demonstrated that Ohio does not provide "adequate representation" for him in his efforts to obtain a new trial. Indigent criminal defendants have a right to appointed counsel under the United States and Ohio Constitutions, which "extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *State v. Crowder,* 60 Ohio St. 3d 151, 573 N.E.2d 652, syllabus ¶ 1 (Ohio 1991) ("an indigent petitioner does not have a state or a federal constitutional right to representation by an attorney in a postconviction proceeding"). Accordingly, Ohio Rule of Criminal Procedure 44(A) requires the appointment of counsel for indigent defendants "from [a defendant's] initial appearance before a court through [the defendant's] appeal as of right . . . ." Ohio R. Crim. P. 44(A). And Ohio Rev. Code § 2953.21(I) provides for the appointment of counsel for indigent capital petitioners in a *first* post-conviction proceeding. But Ohio courts of appeals have held that § 2953.21(I) does not allow for appointment of counsel in successive post-conviction proceedings, including motions for a new trial. *See State v. Conway*, No. 12AP-412,

13

2013 WL 4679318, at *13 (Ohio Ct. App. Aug. 29, 2013) ("appointment of counsel is required [under § 2953.21(I)] only in the case of a timely-filed first petition for post-conviction relief"); *State v. Clumm*, No. 08 CA 32, 2010 WL 364460, at *2 (Ohio Ct. App. Jan. 28, 2010) (finding no right to appointed counsel to file motion for new trial twenty-eight years after court decided defendant's first appeal).

Nevertheless, Hill may be able to obtain state-funded representation under Ohio's Public Defender Act.  The Act provides:

> (A)(1)  The county public defender shall provide legal representation to indigent adults and juveniles who are charged with the commission of an offense or act that is a violation of a state statute and for which the penalty or any possible adjudication includes the potential loss of liberty and in postconviction proceedings as defined in this section.

Ohio Rev. Code § 120.16(A)(1).  As Hill notes, this representation is not guaranteed.  The Act also states:

> (D) The county public defender shall not be required to prosecute any appeal, postconviction remedy, or other proceeding, unless the county public defender is first satisfied there is arguable merit to the proceeding.

Ohio Rev. Code § 120.16(D).  *See also Crowder*, 60 Ohio St. 3d at 153, 573 N.E.2d at 654 (recognizing that in post-conviction proceedings, "the petitioner, pursuant to R.C. 120.16(A)(1) and (D), is entitled to representation by a public defender at such a proceeding if the public defender concludes that the issues raised by the petitioner have arguable merit").  Still, as long as Ohio law affords Hill with an opportunity for "adequate representation" in his state-court proceedings, federally funded counsel is not permitted under *Harbison*.  *See Harbison*, 556 U.S. at 189 ("[§ 3599(a)(2)] provides for counsel only when a state petitioner is unable to obtain adequate representation").

14

Hill argues that the Ohio Public Defender's Office cannot represent him because the Trumbell County branch and the post-conviction unit of the office represented him during his state *Atkins* proceedings and are currently the subject of ineffective-assistance and other claims in his habeas action. (ECF No. 156, 10.) He also cites the difficulty in finding qualified counsel and the potential delay caused by the involvement of new counsel in his case as reasons supporting his current habeas counsel's appointment. (*Id*. at 10-11.) The Court notes again, however, that Hill's *Atkins* claims are separate and distinct from the claims Hill now wishes to pursue in state court. The Court is not convinced that the Ohio Public Defender cannot provide Hill with effective and efficient representation.

### III. Conclusion

Accordingly, Hill's request that the Court authorize his federally appointed and funded counsel who currently represent him in his habeas case in this Court to represent him in state-court litigation is denied.

IT IS SO ORDERED.

                                                 */s/ John R. Adams*
                                                 JOHN R. ADAMS
                                                 UNITED STATES DISTRICT JUDGE

May 15, 2014